# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #030

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **29th day of June, 2026** are as follows:

**BY Weimer, C.J.:**

2025-C-01318    JOHNNY COUSAIN  VS.  SMITTY'S SUPPLY, INC. AND NATIONAL UNION  FIRE  INSURANCE  COMPANY  (Parish  of  St.  Tammany)

AFFIRMED. SEE OPINION.

# SUPREME COURT OF LOUISIANA

## No. 2025-C-01318

## JOHNNY COUSAIN

## VS.

## SMITTY'S SUPPLY, INC. AND NATIONAL UNION FIRE INSURANCE COMPANY

*On Writ of Certiorari to the Court of Appeal, First Circuit, Office of Workers' Compensation, District 6*

**WEIMER**, Chief Justice*

A writ was granted in this matter to determine whether the forfeiture of workers' compensation benefits, for making a willful misrepresentation in violation of La. R.S. 23:1208, applies prospectively from the date of the misrepresentation or requires the loss of all benefits from the date of the accident. After the work-related injury, the employer initially paid no benefits to the employee. Subsequently, the employer claimed the employee intentionally made false statements in his deposition for the purpose of obtaining benefits. At trial, the workers' compensation judge ("WCJ") found the employee was temporarily totally disabled from the accident, but that the employee forfeited his entitlement to benefits from the date of the deposition forward. The court of appeal affirmed that portion of the WCJ's ruling, following its own First Circuit precedent in **Leonard v. James Indus. Constructors**, 03-0040 (La. App. 1 Cir. 5/14/04), 879 So.2d 724, and rejecting the employer's argument that the forfeiture of benefits applies retroactively to the date of the accident–the approach later followed in the Fifth Circuit in **Moran v. Rouse's Enters.**, LLC, 19-239 (La. App. 5 Cir. 12/26/19), 286 So.3d 1245.

---

* Judge Allison H. Penzato of the Court of Appeal, First Circuit, heard this case as Justice pro tempore, sitting for the vacancy in the First District. She is now appearing as an ad hoc for Justice William Burris.

This court granted certiorari to resolve a circuit split in the appellate courts regarding whether a forfeiture of benefits applies prospectively from the date of the false statement or retroactively to the date of the accident. Finding the forfeiture of benefits is prospective only, we affirm the decision of the court of appeal in this matter.

## FACTS AND PROCEDURAL HISTORY

On June 30, 2021, Johnny Cousain was involved in a work-related motor vehicle accident, which he reported to his employer, Smitty's Supply, Inc., on the same day, but reported no injuries at that time. He was terminated from his employment two days later. Mr. Cousain then reported neck and back injuries to Smitty's by letter, through counsel, demanding authorization of an initial evaluation by his choice of orthopedic surgeon. Thereafter, he filed a disputed claim for compensation with the Office of Workers' Compensation ("OWC"), alleging that Smitty's had not paid any wage benefits or authorized any medical treatment.

The misrepresentation at issue arose from Mr. Cousain's March 3, 2022 deposition, where Mr. Cousain testified that, two days after the accident, he sought emergency room care at North Oaks Medical Center for his injuries. He further testified that he underwent an x-ray and was placed off work for two days. The medical records, however, showed that Mr. Cousain did not receive emergency room care two days after his accident. Smitty's filed an amended answer in the OWC, asserting that Mr. Cousain made an intentional misrepresentation for the purpose of obtaining workers' compensation benefits and, thus, had forfeited his right to benefits.

At trial, Mr. Cousain testified that he had received care at North Oaks on many other occasions for other reasons and was merely confused about the dates of his care. The WCJ, however, did not find this claim of confusion credible, stating:

Mr. Cousain was asked in his March 3, 2022, deposition about his medical care related to his workplace injuries. Mr. Cousain reported that he had care at North Oaks emergency room within two days of the accident. Mr. Cousain went into detail about this care. However, the medical records introduced at trial show that Mr. Cousain did not get care at North Oaks for injuries from the June 30, 2021, accident. Mr. Cousain alleges that because he had so many visits to North Oaks for other matters that he was confused and mistaken. Mr. Cousain's testimony was clear and resolute. Mr. Cousain was not receiving benefits at the time of the deposition, and emphasizing medical care shortly after the accident would help to prove a contested injury. Mr. Cousain was seeking benefits, and he seemed to be aware that whether he was injured was a contested matter. In observing Mr. Cousain's testimony and demeanor during the trial, the court did not believe that Mr. Cousain accidentally confused receiving care at North Oaks for this accident. The court finds that Mr. Cousain willfully made false statements in his deposition for the purpose of obtaining workers' compensation benefits.

The WCJ found that Mr. Cousain violated La. R.S. 23:1208 when he willfully made false statements in his deposition for the purpose of obtaining workers' compensation benefits. Accordingly, under La. R.S. 23:1208(E), he forfeited any right to workers' compensation benefits commencing on March 3, 2022, the date of the deposition in which the WCJ found the falsehood occurred. He was also assessed a $1,000 civil penalty payable to the Kids Chance Scholarship Fund, Louisiana Bar Foundation, pursuant to La. R.S. 23:1208(D), but Smitty's was not awarded any restitution, as it had not proved it paid any benefits for which restitution could be granted. The WCJ further found that, before the misrepresentation occurred, Mr. Cousain was temporarily totally disabled for a period of 12 weeks and awarded him indemnity benefits in the amount of $6,437.40 and medical expenses of $1,251.00. Smitty's was ordered to pay $5,000.00 in attorney's fees for failing to pay indemnity benefits, $5,000.00 in attorney's fees for failing to pay or authorize necessary and related medical care, and $2,000.00 in attorney's fees for failing to authorize Mr. Cousain's choice of physician. The WCJ imposed three separate penalties against Smitty's in the amount of $2,000.00 for each of the three violations, pursuant to La. R.S. 23:1201(F).

Smitty's appealed this judgment to the appellate court, seeking a retroactive forfeiture of all benefits and arguing that all penalties and attorney's fees should be overturned. Mr. Cousain answered the appeal, arguing that his false statements were inadvertent and inconsequential, not willful misrepresentations. The appellate court[1] vacated the attorney fee award, in part,[2] and otherwise affirmed the lower court's ruling. **Cousain v. Smitty's Supply, Inc.**, 25-0107 (La. App. 1 Cir. 9/19/25), unpub., 2025 WL 2735436. Undertaking review under the manifest error standard, the court of appeal found record support for the WCJ's finding that Smitty's satisfied its burden of proving the three requirements under La. R.S. 23:1208 for forfeiture of workers' compensation benefits: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining compensation benefits. *Id.*, 25-0107 at 5-7, 2025 WL 2735436 at *2-4. The court of appeal deferred to the WCJ's finding that Mr. Cousain's testimony was not credible and upheld the WCJ's finding that Mr. Cousain's false statements were willfully made for the purpose of obtaining workers' compensation benefits. *Id.*, 25-0107 at 7-8, 2025 WL 2735436 at *4. Following **Leonard**, the court of appeal found that where the misrepresentation was not made at the time of the accident but sometime later, the forfeiture was effective at the time of the misrepresentation. *Id.*, 25-0107 at 10, 2025 WL 2735436 at *5. In **Leonard**, the court reasoned that the word "any" in the statute is quantitative, not temporal, and noted the statute is quasi-penal, and such statutes are to be strictly construed. *Id.*, 25-0107 at 9, 2025 WL 2735436 at *4. The court observed that earlier decisions of this court neither addressed when the forfeiture was effective nor mandated forfeiture of benefits from the date of the accident. *Id.*, 25-0107 at 9-10, 2025 WL 2735436 at *4-5 (citing **Resweber v.**

---

[1] The court of appeal rendered an opinion with two judges concurring without reasons.

[2] The court of appeal found merit in Smitty's argument that the award of multiple attorney's fees was erroneous and rendered judgment to combine the awards into a single attorney fee award in accordance with La. R.S. 23:1201(J).

**Haroil Const. Co.**, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7; **St. Bernard Parish Police Jury v. Duplessis**, 02-0632 (La. 12/4/02), 831 So.2d 955). The court of appeal, therefore, affirmed the judgment in this respect, and denied Mr. Cousain's answer to the appeal. *Id.*, 25-0107 at 12, 2025 WL 2735436 at *6. While the opinion rejected Smitty's argument that forfeiture applies retroactively, it did not discuss the Fifth Circuit's decision in **Moran**.

Smitty's filed a writ application in this court, which was granted. **Cousain v. Smitty's Supply, Inc.**, 25-01318 (La. 1/28/26), 427 So.3d 692. Mr. Cousain has not separately filed a writ in this court to challenge the lower courts' finding that he willfully made a false statement for the purpose of obtaining benefits.[3] Accordingly, the sole issue before this court is whether the ensuing forfeiture of benefits is prospective only or retroactive to the date of the accident.

## DISCUSSION

The Louisiana Workers' Compensation Act contains two separate anti-fraud forfeiture provisions by which employers may defend against paying a claim. Louisiana Revised Statute 23:1208.1 applies when a falsity was made on an employer's medical questionnaire, before the accident or injury. See **Wise v. J.E. Merit Constructors, Inc.**, 97-0684, p. 6 (La.1/21/98), 707 So.2d 1214, 1217. A separate provision under La. R.S. 23:1208 applies to situations where, as here, during a pending claim, a claimant has made a false statement or misrepresentation for the specific purpose of obtaining workers' compensation benefits. *Id.* Louisiana Revised Statute 23:1208 provides, in relevant part:

---

[3] While Mr. Cousain argues in his brief that the lower courts manifestly erred in finding he committed fraud under La. R.S. 23:1208, the argument is not properly before this court. If a party seeks to raise issues that call for a change in the judgment below, the party must file an appeal or petition, but if one merely makes alternative arguments in support of the judgment, the party need not do so. **City of Baton Rouge/Par. of E. Baton Rouge v. Myers**, 13-2011, p. 5 (La. 5/7/14), 145 So.3d 320, 330 n. 5 (citing **Roger v. Estate of Moulton**, 513 So.2d 1126, 1136 (La. 1987) (on reh'g)). We note the WCJ's findings are subject to the manifest error standard of review, which is very difficult to breach.

5

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

….

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

This court has found La. R.S. 23:1208 "clear and unambiguous" in prior cases, which have addressed the nature of the employee's misrepresentation and the extent of the benefits subject to forfeiture.

In **Resweber**, 94-2708 at 7, 660 So.2d at 12, this court held that Section 1208 clearly applies to **any** willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment" and has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries. In examining the legislative history of La. R.S. 23:1208, this court explained:

> The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent. ... The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.

*Id.*, 94-2708 at 7-8, 660 So.2d at 12-13.

In **Duplessis**, 02-0632 at 2, 831 So.2d at 956, the employee, who had been receiving benefits for nine years, falsified mileage reports seeking more mileage reimbursement than owed. While the WCJ found that the employee had willfully submitted false mileage reports in violation of La. R.S. 23:1208, the only benefit ordered forfeited was the mileage benefit, not other benefits. *Id.*, 02-0632 at 3-4, 831 So.2d at 957. The judgment was affirmed on appeal. *Id.*, 02-0632 at 4, 831

6

So.2d at 957.  This court reversed, finding that although the willfully false statement related only to the claim for mileage reimbursement, the statute required that any employee found in violation of La. R.S. 23:1208 would "forfeit any right to compensation benefits."  *Id.*, 02-0632 at 9, 831 So.2d at 960.  This court, therefore, determined that the statute mandated forfeiture of all workers' compensation benefits, not just the mileage benefits associated with the false statement.  *Id.*  The court's decision, however, based on the question before it at that time, addressed the type of benefits forfeited, not the timing at which the forfeiture became effective.

Soon after, the First Circuit, sitting en banc, considered the timing of the forfeiture in **Leonard**.  There, the WCJ and the court of appeal found the forfeiture of benefits effective from the date of the misrepresentation forward.  **Leonard**, 03-0040 at 9, 879 So.2d at 730.  The employee admitted in his trial testimony that he lied about back pain to medical providers at a hospital emergency room to obtain medication due to drug addiction.  *Id.*, 03-0040 at 5, 879 So.2d at 728.  The appellate court majority reasoned that **Duplessis** did not address **when** the forfeiture was to be effective and did not require forfeiture of benefits dating back to the time of the injury.  *Id.*, 03-0040 at 8, 879 So.2d at 730.  Looking to this court's opinion in **Resweber**, the majority acknowledged this court's statement that La. R.S. 23:1208 applies to any false statement made specifically for the purpose of obtaining benefits and "therefore **generally** becomes applicable at the time of an employee's accident or claim."  *Id.* (quoting **Resweber**, 94-2708 at 1, 660 So.2d at 9 (emphasis added)).  Finding this language suggests no inflexible rule on when the forfeiture is effective, the majority determined that where the misrepresentation is not made at the time of the accident, but occurs at some later time, the forfeiture is effective at the time of the misrepresentation, rather than the time of the accident.  **Leonard**, 03-0040 at 9, 879 So.2d at 730.

Interpreting the statutory language, the majority found the word "any" in the statute is quantitative, not temporal. The court of appeal noted that statutory forfeiture of workers' compensation benefits is a harsh remedy, which must be strictly construed, and that Section 1208, as a quasi-penal statute, must be strictly construed. *Id.* The court reasoned that a retroactive application would not result in a "forfeiture" of benefits, but, in effect, a "denial" of benefits, if it included benefits to which the employee was undisputedly entitled. *Id.* In reaching its decision, the court of appeal overruled its earlier decision in **LeBlanc v. Grand Isle Shipyard, Inc.**, 95-2452 (La. App. 1 Cir. 6/28/96), 676 So.2d 1157, which held that La. R.S. 23:1208 does not limit the forfeiture of benefits to the time period after the claimant makes the false statements or misrepresentations. *Id.*, 03-0040 at 7, 879 So.2d at 729.

Three judges authored separate concurrences agreeing with the majority's conclusion and further focusing on the statute as a whole, particularly the interplay between Subsections D and E. Subsection D provides:

> In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars payable to the Kids Chance Scholarship Fund, Louisiana Bar Foundation, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.

La. R.S. 23:1208(D).

Judge Whipple's concurrence noted that, under Subsection D, an employee who violates this statute may be ordered to pay restitution only for "benefits claimed or payments obtained through fraud"–not all benefits ever paid. **Leonard**, 03-0040 at 1, 879 So.2d at 731 (Whipple, J., concurring). If Subsection E were read to provide that forfeiture of all benefits is retroactive to the date of the accident, regardless of when the misrepresentation occurs, then presumably, the employee

8

should owe reimbursement of all benefits to which he had ever been entitled. *Id.* However, La. R.S. 23:1208(D) does not provide for such reimbursement. *Id.*[4]

Judge McClendon's concurrence likewise considered Subsections D and E in light of one another. *Id.*, 03-0040 at 1, 879 So.2d at 733 (McClendon, J., concurring). The concurrence emphasized that statutory provisions should be construed as a whole with the remainder of the statute, and all statutes on the same subject matter should be read together and interpreted as a whole to effect the legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect. *Id.* It is presumed that the intention of the legislative branch is to achieve a consistent body of law. *Id.*

Judge Kuhn further concurred to recognize the underlying principle that workers' compensation claims are in derogation of the general rights of tort victims and that forfeiture is an infliction of "a draconian penalty that deprives workers' compensation claimants of their rights to compensation not reasonably related to ... the misrepresentation." *Id.*, 03-0040 at 1, 879 So.2d at 732 (Kuhn, J., concurring).

In dissent, Chief Judge Carter criticized the majority's reading of **Duplessis** as having not addressed the point in time at which the forfeiture of benefits is to be effective. **Leonard**, 03-0040 at 1, 879 So.2d at 734 (Carter, C.J., dissenting). Rather, Chief Judge Carter was "convinced" that the clear and unambiguous language of Section 1208, this court's decisions in **Resweber** and **Duplessis**, and the First Circuit's decision in **LeBlanc**, "lead to the inescapable conclusion" that a violation of Section 1208 results in the forfeiture of all benefits the employee would

---

[4] See also **Our Lady of the Lake Reg'l Med. Ctr. v. Helms**, 98-1931 p. 1 (La. App. 1 Cir. 9/24/99), 754 So.2d 1049, 1056 (Weimer, J., concurring) (writing that while all compensation would be forfeited when a fraudulent statement is made at an initial stage of the claim, where an employee sustained a work-related injury, but makes a misrepresentation at a later stage of a claim, the employee should only owe reimbursement of benefits received after the false statement was made).

otherwise be entitled to receive, regardless of when the misrepresentation occurred. *Id.*, 03-0040 at 1-2, 879 So.2d at 733-34. The dissent noted no limiting language for the effective date applicable to forfeiture of benefits in **Duplessis**, **Resweber**, or the statute. If the legislature had seen fit to limit the forfeiture of benefits to the time period after the fraudulent conduct had occurred, it could have done so. *Id.*, 03-0040 at 2-3, 879 So.2d at 734. In contrast, the dissent noted, Subsection D of Section 1208 limited the time period for restitution. *Id.*, 03-0040 at 3, 879 So.2d at 734. In the dissent's reading of La. R.S. 23:1208, the legislature intended to punish fraudulent conduct by mandating forfeiture of all benefits. *Id.*

The Third Circuit similarly rejected an employer's argument that benefits must be forfeited retroactively to the date of the accident where the employee was otherwise entitled to benefits prior to the misrepresentation. In **Jim Walter Homes, Inc. v. Guilbeau**, 05-1473, p. 11 (La. App. 3 Cir. 6/21/06), 934 So.2d 239, 246-47, the court reasoned that if La. R.S. 23:1208(E) were applied retroactively to the date when benefits first accrued, a claimant would lose all benefits, not just those for which there is actual proof that benefits are being obtained or continued via a false, willful statement. Further, the court stated, if the legislature meant to provide for retroactive application, the words "retroactive to the date when benefits accrued" would have to have been included in La. R.S. 23:1208(E). *Id.*, 05-1473 at 11, 934 So.2d at 247. The court found that to provide otherwise would strictly construe the penalty provision in favor of the employer and not the claimant. *Id.* The court looked to its recent decision in **Apeck Const., Inc. v. Bowers**, 03-486 (La. App. 3 Cir. 12/10/03), 862 So.2d 1087, which analyzed this court's decision in **Duplessis**, but found this court never addressed the issue of when forfeiture begins. **Apeck** considered Subsection D in the context of the Act as a whole, writing as follows:

> As indicated by Subsection D, it is clear that the intent of the legislature was to punish claimants who make false statements or representations to obtain benefits. Otherwise, the legislature would

have provided restitution for any workers' compensation benefits that the employer paid before it became aware of the fraudulent conduct.

The reason for this is simple. Before the misrepresentation, there has been no punishable conduct. The triggering mechanism is the fraudulent conduct. Once the misrepresentation occurs, the provisions of La. R.S. 23:1208 apply, and from that point the claimant's right to benefits is forfeited. Any other interpretation would have the effect of promoting a system whereby the employers would fail to commence the payment of workers' compensation benefits in the hope of a future false statement which would relieve it completely of the obligation of paying workers' compensation benefits, including its own actions which would be punishable under the Workers' Compensation Act. This would thwart the purpose of the Workers' Compensation Act which was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families.

**Apeck**, 03-486 at 6, 862 So.2d at 1093 (internal quotations and citations omitted).[5]

Smitty's urges this court to adopt the diverging view of another circuit court.

In **Moran v. Rouse's Enters., LLC**, 19-239 (La. App. 5 Cir. 12/26/19), 286 So.3d 1245, the Fifth Circuit upheld the retroactive forfeiture of benefits from the date of the accident for an intentional false statement, which the employee made in her deposition mid-claim. Before the deposition, the employer had contested the employee's entitlement to any benefits based on an intoxication defense. *Id.*, 19-239 at 2, 286 So.3d at 1247. The court of appeal held that the statutory language "shall … forfeit any right to compensation benefits" requires the forfeiture of all benefits, regardless of when the fraudulent conduct or misrepresentation occurs. *Id.*, 19-239 at 11, 286 So.3d at 1252-53. The court found its holding was consistent with this court's analysis in **Duplessis** and agreed with Chief Judge Carter's dissent in **Leonard**, that if the legislature had intended to limit the application of time, as it did in La. R.S. 23:1208(D), it would have clearly expressed that in the statute. *Id.*, 19-

---

[5] Contrast **White v. WIS Int'l**, 19-747, pp. 24-25 (La. App. 3 Cir. 5/20/20), 298 So.3d 237, 255 (upholding denial of all benefits and distinguishing **Jim Walter Homes** and **Apeck** where "there was no dispute that the employee was otherwise entitled to benefits prior to the employees' fraudulent misrepresentations" whereas "all of Ms. White's claims for indemnity and medical benefits are disputed, and the intentional misrepresentations noted by both WIS and the WCJ are directly related to the those claims").

239 at 11, 286 So.3d at 1253.  Recognizing the contrary holdings of the **Leonard** majority and **Jim Walter Homes**, the Fifth Circuit nevertheless determined that its statutory construction prevails.  *Id.*, 19-239 at 9-11, 286 So.3d at 1251-53.

The split in the circuits regarding the interpretation of La. R.S. 23:1208 warrants resolution in this court.  See La.S.Ct.R. X, § 1(A)(1).  The starting point in the interpretation of any statute is the language of the statute itself.  **Benjamin v. Zeichner**, 12-1763, pp. 5-6 (La. 4/5/13), 113 So.3d 197, 202.  When a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without further interpretation of the intent of the legislature.  La. C.C. art. 9; see also La. R.S. 1:4.  Further, the words of a law must be given their generally prevailing meaning.  La. C.C. art. 11; see also La. R.S. 1:3.  The word "shall" is mandatory and the word "may" is permissive."  *Id.*

It is presumed that every word, sentence, or provision was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed.  **McGlothlin v. Christus St. Patrick Hosp.**, 10-2775, p. 11 (La. 7/1/11), 65 So.3d 1218, 1228.  Courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found.  *Id.*

Furthermore, a statute should be construed in such way as to reconcile, if possible, apparent inconsistencies so that each part is given effect.  **Luv N' Care, Ltd. v. Jackel Int'l Ltd.**, 19-0749, p. 8 (La. 1/29/20), 347 So.3d 572, 578.  Since the meaning is to be determined from a general consideration of the act as a whole, all parts, provisions, or sections must be read together; each must be considered with respect to, or in the light of, all the other provisions, and construed in harmony with the whole.  *Id.*  The intent as deduced from the whole will prevail over that of a

12

particular part considered separately. **Arrant v. Graphic Packaging Int'l, Inc.**, 13-2878, p. 7 (La. 5/5/15), 169 So.3d 296, 301. Meaning should be given, if possible, to each and every section, and the construction placed on one portion should not be such as to obliterate another; so, in determining the meaning of a word, phrase, or clause, the entire statute is to be considered. *Id.*

This court previously declared La. R.S. 23:1208 clear and unambiguous. **Resweber**, 94-2708 at 7, 660 So.2d at 12; **Duplessis**, 02-0632 at 9, 831 So.2d at 960. Subsection E provides that an employee violating Section 1208 "shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits." While Subsection E lacks language whether the forfeiture of "any right to compensation benefits" is prospective or retroactive, when read in the context of La. R.S. 23:1208 and the Act as a whole, its meaning is clear. The preceding paragraph, Subsection D, provides the employer a limited remedy of restitution. Restitution "may" be ordered by the WCJ and is permissive, not mandatory. See La. R.S. 1:3. Restitution is explicitly linked to a particular time frame: benefits obtained through the fraud and only until the time the employer became aware of the fraud. Section 1208 does not afford employers restitution of benefits the employer paid before the fraud. As Judge Whipple pointed out, "If in fact section (E) of LSA–R.S. 23:1208 were read to provide that, regardless of when the misrepresentation occurs, forfeiture of all benefits is retroactive to the date of the accident, then presumably, the employee should owe reimbursement of all benefits to which he had ever been entitled. However, LSA–R.S. 23:1208(D) clearly does not provide for such reimbursement." **Leonard**, 03-0040 at 1, 879 So.2d at 731 (Whipple, J., concurring).

Comparing Subsections D and E and recognizing that Subsection D specifies a time limited remedy while Subsection E does not, this court does not find, as Smitty's suggests, that the legislature's omission in Subsection E signals an

intentional choice to establish a retroactive and claim-wide forfeiture remedy to the employer. Instead, as principles of statutory construction compel, the subsections must be read together and in light of one another to afford meaning to each. Mindful that the legislature presumptively endeavors to create a uniform and consistent body of law, it would be inconsistent to allow a blanket denial of benefits under one subsection with only a time-limited restitution remedy under another subsection. Applying Subsection E retroactively would render the time-limited restitution under Subsection D meaningless, or even render these Subsections in conflict with each other. A retroactive interpretation would provide a more favorable remedy to the employer who denies benefits from the inception of the claim, while failing to afford a restitution remedy to the employer who pays benefits in good faith. The **Moran** decision and the **Leonard** dissent do not express a compelling rationale under which the legislature would choose to draft the employer's remedy in this way. Thus, we are not persuaded that the absence of a time limitation in Subsection E evidences legislative intent for broader forfeiture than restitution, or that reading the provisions together negates applying the text as written.

Reading Section 1208 as a whole, the phrase "any right to compensation benefits" is "quantitative, not temporal" and applies to benefits accruing after the misrepresentation only. See **Leonard**, 03-0040 at 9, 879 So.2d at 730. Stated another way, the quoted phrase addresses the amount of the benefits forfeited but not the timeframe covered by the forfeiture. Where the employer successfully proves a violation of Section 1208, the WCJ **may** order restitution for benefits obtained through the fraud under Subsection D and **shall** order forfeiture of benefits accruing after the fraud under Subsection E. Reading these subsections together and in light of one another to afford meaning to each, we find that the forfeiture is effective at the time of the misrepresentation, rather than at the time of the accident.

14

Moreover, this prospective interpretation is bolstered by the surrounding legislation within the Act. In the 2012 amendments to the Act, the legislature statutorily declared that the Act's purpose is provide for timely payment of disability benefits to injured workers who suffered a compensable work-related accident, to pay their medical expenses, and return workers who have received benefits to the workforce. La. R.S. 23:1020.1(B). The Act expressly states the legislative intent "[t]hat the Louisiana Workers' Compensation Law is to be interpreted so as to assure the delivery of benefits to an injured employee in accordance with this Chapter" and "[t]o facilitate injured workers' return to employment at a reasonable cost to the employer." La. R.S. 23:1020.1(C).[6]

Louisiana Revised Statute 23:1031(A) defines an employee's eligibility for receipt of workers' compensation benefits: [i]f an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. To that end, La. R.S. 23:1201 requires that "[p]ayments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident" and provides for payment of indemnity benefits and medical expenses, along with corresponding penalties and attorney's fees for an employer or insurer's failure to timely furnish the employee with benefits when due.

This court has commented on the balancing of interests and tradeoffs inherent within the application of the Act. We described the "quid pro quo" underlying the

---

[6] The Act does not provide presumptions or strict construction. Rather, "it is the specific intent of the legislature that workers' compensation cases shall be decided on their merits. Disputes concerning the facts in workers' compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; the laws pertaining to workers' compensation shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee." La. R.S. 23:1020.1(D)(1)-(2).

15

Act as "that of a compromise in which the employer surrenders immunity from liability, which he would otherwise be entitled to in cases wherein he was without fault, and, in return, the employee foregoes his right to full damages for his injury in exchange for limited but certain compensation." **Austin v. Abney Mills, Inc.**, 01-1598, p. 10 (La. 9/4/02), 824 So.2d 1137, 1144-45. This court expounded on the Act's purpose as a compromise between employer's and employee's interests at its inception:

> The [A]ct, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families. It was also deemed advisable to provide for compensation, in cases of death, to the persons dependent upon the employee for support so that these persons would not be entirely bereft of funds during the period of time following the employee's death when they, of necessity, were compelled to reconstruct their lives and seek a means of support,—thus avoiding the possibility that these persons would become public charges. In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and the employee. The employee was required to waive the right granted him under the general law, Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of his disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability.

**O'Regan v. Preferred Enters., Inc.**, 98-1602, p. 5 (La. 3/17/00), 758 So.2d 124, 128-29 (quoting **Atchison v. May**, 201 La. 1003, 10 So.2d 785, 788 (1942)).

Having recognized that the Act supplies benefits in exchange for forgoing a tort remedy, this court also observes in the Act a tradeoff between penalties and forfeiture. The balance between penalties and forfeiture, and the need for the Act to function as a fair trade, is particularly salient where, as here, no party has clean hands. The employer failed to institute benefits or pay medical bills when due and was assessed with penalties and attorneys' fees as the Act provides under La. R.S. 23:1201. The employee lied about his medical care to obtain the benefits the

16

employer had failed to pay him, and he forfeited his right to benefits under La. R.S. 23:1208. Applying that forfeiture retroactively does not deter misrepresentation any further than it would prospectively. Instead, a retroactive forfeiture erodes the Act's purpose as a compromise, undermines the predictability and stability that the workers' compensation framework was designed to provide, and potentially transfers the obligation to the general public to support the injured employee despite the fact that he was hurt at work. See **O'Regan**, 98-1602 at 5, 758 So.2d at 128-29.

The Act supplies penalties and attorney's fees, which are "imposed to discourage indifference and undesirable conduct by employers and insurers" that have failed to timely comply with their obligations to pay benefits to employees who have sustained compensable injuries. See **Williams v. Rush Masonry, Inc.**, 98-2271 (La. 6/29/99), 737 So.2d 41, 46. A finding that Section 1208 applies retroactively to the date of the accident would alleviate the employer's obligation under La. R.S. 23:1201, which is to pay the injured worker indemnity benefits and to pay his medical bills. Rather than eliminating those penalties and attorney's fees against an employer who has not fulfilled those obligations, a prospective forfeiture harmonizes Section 1201 with 1208 by penalizing the employer that has failed to pay benefits during the period owed and ordering the employee's benefits forfeited beginning with the time the employee makes a misrepresentation for the purpose of obtaining benefits. As one court cautioned:

> Any other interpretation would have the effect of promoting a system whereby the employers would fail to commence the payment of workers' compensation benefits in the hope of a future false statement which would relieve it completely of the obligation of paying workers' compensation benefits, including its own actions which would be punishable under the Workers' Compensation Act.

**Apeck**, 03-486 at 6, 862 So.2d at 1093.

While Mr. Cousain's misrepresentation resulted in the forfeiture of his benefits as of the date of the lie, he was due benefits before that time for a period of

temporary total disability, and the WCJ found Smitty's liable for penalties and attorney's fees for failing to pay the benefits due. We find this ruling consistent with the purpose and legislative intent underlying the Act and properly harmonizes its provisions.

## CONCLUSION

Reading the statute as a whole and in the broader context of the Act, we hold that an employee found in violation of La. R.S. 23:1208 forfeits the right to obtain workers' compensation benefits from the time the willful misrepresentation occurs. The forfeiture is prospective from the date of the misrepresentation forward and is not a retroactive loss of benefits to which the employee was entitled before the misrepresentation was made. To the extent that **Moran v. Rouse's Enters., LLC**, 19-239 (La. App. 5 Cir. 12/26/19), 286 So.3d 1245, held that La. R.S. 23:1208(E) requires a loss of all benefits from the date of the accident, that decision is overruled. For the above reasons, the ruling of the court of appeal is affirmed.

## DECREE

**AFFIRMED.**

18